1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SHYH-YIH HAO, | ) | Case No.: 10-CV-00826-LHK |
| | ) | |
|           Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
|    v. | ) | MOTION TO DISMISS OR ABSTAIN |
| | ) | |
| WU-FU CHEN, and DOES 1 through 10, | ) | |
| inclusive, | ) | |
| | ) | |
|           Defendant. | ) | |
| | ) | |
| | ) | |

Defendant Wu-Fu Chen moves to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, to dismiss or stay the action in deference to a dissolution proceeding currently underway in state court. Pursuant to Civil Local Rule 7-1(b), the Court concludes that this motion is appropriate for determination without oral argument and vacates the hearing set for March 17, 2011. Having considered the submissions of the parties and the relevant law, the Court DENIES Defendant's motion. The Court will hold a case management conference on April 6, 2011 at 2 p.m.

## I. Background

### A. Factual Background

Plaintiff Shyh-Yih Hao ("Hao") is the brother-in-law of Defendant Wu-Fu Chen ("Chen"). Second Amended Compl. ("SAC") ¶ 4. Chen is a Silicon Valley venture capitalist who co-founded Ardent Communications Corp., a successful IT company acquired by Cisco Systems in the 1990s.

1

United States District Court
For the Northern District of California

1    SAC ¶ 4; Decl. of Wu-Fu Chen in Supp. of Mot. to Dismiss ("First Chen Decl.") ¶ 5(a), ECF

2    No. 7.  Through this venture and others, Chen "amassed a considerable personal fortune."  SAC

3    ¶ 4.  In the mid-1990s, Chen began dating Hao's sister, Ellen Hao Chen ("Ellen"), and in 2000 they

4    married.  First Chen Decl. ¶ 5(b).  Chen and Ellen are currently involved in marriage dissolution

5    proceedings in the Santa Clara County Superior Court.  Decl. of Christina Chen in Supp. of Mot. to

6    Dismiss ("Christina Chen Decl.") ¶ 1, ECF No. 40.

7         On February 26, 2010, Hao initiated this action against Chen, alleging conversion, breach

8    of fiduciary duty, and unjust enrichment and seeking an accounting and other forms of relief.  The

9    facts underlying Hao's allegations are highly contested.  The Second Amended Complaint alleges

10   that Plaintiff Hao invested millions of dollars into two venture fund companies – Chens, LLC, and

11   WFChen, LLC – established by Defendant in July 1998 and April 2000, respectively.  SAC ¶ 5.

12   Sometime thereafter, these companies were transferred to Cascade Capital Management, LLC, a

13   company formed in the Cayman Islands and allegedly managed by Defendant.  SAC ¶ 9.  Plaintiff

14   alleges that he was unaware of this transfer until sometime in 2009; that his signature was forged

15   on the Interest Transfer Agreement that transferred his ownership interest in Chens, LLC, and

16   WFChen, LLC; and that he never received the $7,084,808 he was due under the Interest Transfer

17   Agreement.  SAC ¶¶ 8-9.  He therefore seeks an accounting of transactions relating to Chens, LCC,

18   and WFChen, LCC, as well as actual and punitive damages, restitution, disgorgement of profits,

19   and imposition of a constructive trust.

20        Defendant Chen has provided a very different account of the facts in the moving papers and

21   declarations filed in this action.  According to Chen, Hao never invested any of his own money in

22   the venture funds.  Rather, Chen alleges that while he and Hao's sister, Ellen, were dating, he

23   placed stock into a Charles Schwab account for Ellen to manage.  First Chen Decl. ¶ 5(b).  At the

24   time, Ellen was divorcing her first husband, and Chen alleges that he created the Schwab account

25   in Hao's name in order to prevent Ellen's first husband from learning about the transaction.  First

26   Chen Decl. ¶ 5(c).  Chen claims that the funds in the Schwab account were not a gift and that,

27   although held in Hao's name, the funds were expressly intended to be the community property of

28   Ellen and Chen when they married.  *Id.*  According to Chen, the money used to pay for Hao's

2

**United States District Court**
For the Northern District of California

1   interest in Chens, LLC, as well as allegedly unauthorized capital contributions to WFChen, LLC,

2   came from the funds in the Schwab account.  First Chen Decl. ¶ 5(k).  He therefore alleges that any

3   interest Hao claims in the venture funds was merely "a fiction intended to describe the interest of

4   Ellen." First Chen Decl. ¶ 5(l).

5   ### B.  Procedural History

6       Hao initiated this action in federal court on February 26, 2010.  The Complaint alleged that

7   the federal district court had subject matter jurisdiction over the action pursuant to 28 U.S.C.

8   § 1332(a)(2), as an action between a United States citizen and a citizen of a foreign state.  Compl.

9   at 1.  In his first motion to dismiss, Chen urged the Court to dismiss this action for lack of subject

10   matter jurisdiction, on grounds that (1) diversity of citizenship was improperly pled, and (2) the

11   action was subject to the domestic relations exception to diversity jurisdiction.  In the alternative,

12   Chen requested that the Court abstain from exercising jurisdiction based on the overlap between

13   this action and the state-court domestic relations proceeding, or under the doctrines of *Younger* or

14   *Colorado River* abstention.  In its order of October 5, 2010, the Court concluded that the domestic

15   relations exception to diversity jurisdiction did not apply, but agreed that the Complaint did not

16   adequately allege Chen's state citizenship.  Accordingly, the Court granted the motion to dismiss

17   with leave to amend to cure the jurisdictional defect and deferred consideration of abstention until

18   the threshold issue of jurisdiction could be properly resolved.

19       Hao filed a Second Amended Complaint[1] on November 4, 2010, which contains facially

20   sufficient allegations regarding Chen's state citizenship.  *See* SAC ¶ 2.  In his second motion to

21   dismiss, Chen argues that the Court should dismiss the case for lack of subject matter jurisdiction

22   because Chen is actually domiciled in Taiwan and therefore diversity of citizenship does not exist.

23   Alternatively, Chen argues that the Court should abstain from exercising jurisdiction based on the

24   close relationship between the issues in this case and those involved in the state-court dissolution

25   proceeding.  The Court will first address the threshold issue of subject matter jurisdiction and then

26   turn to the question of abstention.

27

28

[1] In its October 5, 2010 order, the Court found that Plaintiff's First Amended Complaint was improperly filed and granted Plaintiff leave to file a Second Amended Complaint.  Order Granting Motion to Dismiss with Leave to Amend 5, ECF No. 37.

Case No.: 10-CV-00826-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR ABSTAIN

## II. Diversity Jurisdiction

As a threshold matter, Chen argues that the Court lacks subject matter jurisdiction over this action because he is a United States citizen domiciled in Taiwan and thus a "stateless" person for purposes of the diversity statute. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Id.* Thus, if Chen is indeed a United States citizens domiciled in Taiwan, he is neither a citizen of a state, nor an alien, and his presence necessarily destroys diversity. *See Brady v. Brown*, 51 F.3d 810, 815 (9th Cir. 1995) (presence of foreign-domiciled U.S. citizen defendant destroys complete diversity). As discussed below, however, the Court finds that Chen was domiciled in California at the outset of this action, and therefore diversity jurisdiction exists.

### A.  Legal Standard

It is axiomatic that federal courts are courts of limited jurisdiction. *Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). Accordingly, on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the party asserting jurisdiction ordinarily has the burden of establishing that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may be either a facial or factual attack on jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial attack, the defendant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In considering a facial attack, a court must take the allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* In contrast, a factual attack challenges the truth of the allegations establishing federal jurisdiction. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir.

4

2003).  A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question, so long as the jurisdictional facts are not intertwined with the merits.  *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987); *accord Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## B.  Discussion

In this case, Defendant Chen presents a factual attack challenging the allegation that he is a citizen of California for purposes of diversity jurisdiction.  Plaintiff claims that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), which confers jurisdiction over cases between "citizens of a State and citizens or subjects of a foreign state" in which the amount in controversy exceeds $75,000.  It is undisputed that Plaintiff is a citizen of Taiwan and that the amount in controversy exceeds $75,000.  The only question is whether Defendant is a citizen of California or any other State for purposes of the diversity statute.[2]

"To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States."  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  For purposes of diversity jurisdiction, domicile is determined as of the time the lawsuit is filed.  *Id.* at 750.  A person is domiciled "in a location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely."  *Id.* at 749-50 (quotation makes and citations omitted).  A person residing in a particular state is not necessarily domiciled there.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Rather, a person's domicile is determined by a number of factors, none of them controlling, including: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or

---

[2] Although Chen claims that he has lived most of his life in Taiwan and always intended to return to Taiwan, the evidence suggests that Chen was domiciled in California beginning in the mid-1990s.  If this is correct, then a presumption in favor of the established domicile (California) would apply, and Chen would bear the initial burden of producing enough evidence to avoid a directed verdict.  *Lew*, 797 F.2d at 751.  Neither of parties has briefed this issue, however, and the Court finds that application of the presumption would be unlikely to make a difference in this case.  Chen has likely produced sufficient evidence to avoid a directed verdict, and Hao would therefore bear the burden of proving that Chen is still domiciled in California.  *Id.*  Under either standard, therefore, Chen bears the burden of proof on this issue.

5

United States District Court
For the Northern District of California

business, driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750. The courts evaluate domicile based on "objective facts" and accord little weight to statements of intent that conflict with those facts. *Id.*

Here, the parties agree that Chen is a dual citizen of the United States and Taiwan, but sharply dispute whether he was domiciled in California at the time this lawsuit was filed, in February 2010. In order to establish Chen's domicile, Chen relies almost exclusively on his own declaration, while Hao relies largely on statements made by Chen in his filings and deposition testimony in the state-court dissolution proceeding.[3] The Court notes, as an initial matter, that it is troubled by the number of inconsistencies between Chen's declaration in support of this motion and the statements he has made in the state court action. While some of the apparent inconsistencies may be attributable to Chen's confusion regarding the meaning of certain legal terms, other discrepancies are straightforward and rather inexplicable.[4] The Court attempts to make sense of these apparent inconsistencies as it evaluates the *Lew* factors below.

### 1. Factors Supporting Domicile in California

#### a. Residence

Chen's residence in February 2010 is the *Lew* factor most contested by the parties. It is undisputed that Chen owned property in both California and Taiwan at the time this action was initiated, and both sides concede that he spent time in both places. The parties' dispute centers on

---

[3] Chen filed a number of objections to evidence submitted by Hao in support of his opposition brief. The Court does not find it necessary to rely on the particular evidence and portions of declarations to which Chen objected and therefore need not address the merits of Chen's evidentiary objections.

[4] For instance, Chen's declaration states that he has lived in Taiwan "most of my life." Decl. of Wu-Fu Chen in Supp. of Mot. to Dismiss SAC ("Third Chen Decl.") ¶ 2. In his deposition testimony in the state-court proceeding, however, Chen stated that he earned a masters degree from the University of Florida-Gainsville and was thereafter enrolled in a PhD program at the University of California-Berkeley in 1975. Decl. of Ellen Hao Chen In Supp. of Def.'s Mot. to Dismiss ("Ellen Decl.") Ex. O, 14:19-15:13. The deposition testimony indicates that Chen then worked continuously in the United States, with the exception of a one- or two-year period around 1990 when he commuted between Boston and Taiwan. Decl. of Ellen Hao Chen In Supp. of Def.'s Mot. to Dismiss ("Ellen Decl.") Ex. O, 15:15-27:25. Based on this information, it appears that Chen either studied or worked in the United States from the mid-1970s until at least 2004, when he allegedly accepted full-time employment in Taiwan. Reply Decl. of Wu-Fu Chen Re: Mot. to Dismiss ("Fourth Chen Decl.") ¶ 2(i). Other discrepancies are described in the analysis below.

6

**United States District Court**
For the Northern District of California

1    the location of his *primary* residence at the time the lawsuit was filed.  Chen acknowledges that

2    from 1998 until the break-up of his marriage with Ellen, his primary residence was their home in

3    Los Altos Hills, California.[5]  The parties agree that Chen has not lived at the Los Altos Hills house

4    since early 2009, when he and Ellen began divorce proceedings.  However, Chen also owns a

5    second house in Cupertino, California.  Hao contends that this Cupertino house has been Chen's

6    primary residence since 2009.  Chen acknowledges that he stays at the Cupertino home while in

7    California, but claims that he moved his primary residence to Taiwan beginning in 2006.

8         Inconsistencies in Chen's representations make the question of primary residence somewhat

9    difficult to resolve.  In his opening brief, Chen submitted a declaration, signed under penalty of

10   perjury, claiming that he purchased a condominium in Taipei (the "Taipei Condominium") in 2005,

11   the title to which was held jointly by him and Ellen.  Third Chen Decl. ¶ 3(c).  The declaration

12   states that beginning in 2006, Chen spent approximately 70 percent of his time in Taiwan and Asia,

13   and the Taipei Condominium became his primary residence.  *Id.* ¶ 3(e).  He claims that since 2006,

14   he has spent approximately 70 percent of his time in Taiwan; 10 percent in other countries in Asia;

15   15 percent in California; and 4 percent in Massachusetts.  *Id.* ¶ 3(e), (g).  He claims, further, that

16   had he not been required to travel to California to deal with the dissolution proceedings in state

17   court, he would not have spent any time in California, except for possible brief trips to visit his

18   children.  *Id.* ¶ 3(h).  The declaration states twice that the Taipei Condominium is now his primary

19   residence and was his primary residence in February of 2010.  *Id.* ¶¶ 3(d), 6(a).

20        In his opposition brief, however, Hao submits evidence that calls these representations into

21   question.  First, Hao clearly establishes, and Chen concedes, that Chen has not had access to the

22   Taipei condominium since mid-2009.  Hao attaches a copy of a declaration submitted by Chen on

23   November 18, 2010, in support of an application for exclusive use of the Taipei Condominium.

---

[5] Chen's declarations concerning the Los Altos Hills home are somewhat inconsistent.  In the declaration filed with the opening brief, Chen states that the Los Altos Hills house was "the primary residence for Ellen Hao and I in the United States from 1998 until the breakup of our marriage."  Chen Decl. at 4 n.1.  In his reply declaration, however, Chen states, "It is not correct that I purchased the Los Altos home with the intention that it would be our 'primary residence.'"  Fourth Chen Decl. ¶ 2(b).  At any rate, there is no indication that the couple owned or resided in property in Taiwan before 2005.  The Court therefore finds it reasonable to infer that the Los Altos Hills home functioned as Chen and Ellen's primary residence at least from 1998 to 2005.

7

**United States District Court**
For the Northern District of California

1   Decl. of Ellen Hao Chen In Supp. of Def.'s Mot. to Dismiss ("Ellen Decl.") Ex. P, ECF No. 63.  In

2   this declaration, Chen claims that Ellen has had possession of the keys to the Taipei Condominium

3   since 2008, and that her mother has occupied the Condo since April 2009.  The declaration states,

4   moreover, that Chen has not so much as entered the building in which the Condo is located since

5   mid-2009.  Chen concedes that the declaration submitted in support of the exclusive use petition is

6   accurate.  He claims that the discrepancies in the declaration filed in this action were an

7   unintentional error, due to miscommunication with his attorney, and maintains that the remainder

8   of his declaration is technically correct.  In his reply declaration, Chen clarifies that since mid-

9   2009, he has lived in a room in his family's home, now apparently occupied by his brother, on

10  Nangang Road in Taipei.  Reply Decl. of Wu-Fu Chen Re: Mot. to Dismiss ("Fourth Chen Decl.")

11  ¶ 4(b)(ii)-(v).  He has also stayed in the homes of other siblings and friends in Taipei from time to

12  time.  *Id.* ¶ 4(b)(v) n.8.

13          The Court is troubled by this significant omission from Chen's original declaration and

14  finds that Chen's contentions regarding residency are further undermined by other statements and

15  declarations he made in the state-court dissolution proceedings.  In those proceedings, Chen has

16  repeatedly represented himself as a resident of California, without suggesting that Taiwan is

17  actually his place of primary residence.  *See* Ellen Decl. Ex. I, 2:22-23 ("I live at 20818 Fargo

18  Drive, Cupertino, CA 95024, and maintain a home on Lanjing East Road, in Taipei"); Ex. K

19  (identifying himself as "a US citizen and California resident"); Ex. N ("WuFu Chen is, and at all

20  relevant times was, a resident of the County of Santa Clara.").  Indeed, in a deposition conducted in

21  the state-court proceeding on March 18, 2010, Chen identified the Cupertino house as his primary

22  residence.  Ellen Decl. Ex. O, 14:7-14.  It is true, as Chen points out, that a person may have more

23  than one residence, and the Court agrees that the evidence suggests that in February 2010, Chen

24  may have been a resident of both Taiwan and California.  Nonetheless, Chen's own statements in

25  the state-court proceedings, made between January of 2009 and March 2010, indicate that he

26  considered California to be his primary residence at the time this lawsuit was filed.  While these

27  statements are not by themselves dispositive of domicile, they lead the Court to conclude that

28

8

California was Chen's primary residence in February 2010.  Accordingly, the residence factor weighs in favor of finding domicile in California.

### b.   Other factors supporting domicile in California

The Court also finds that two other factors weigh in favor of finding domicile in California: the location of Chen's real and personal property and his driver's license and automobile registration.  First, although Chen possesses real and personal property in both California and Taiwan, the Court finds that more of his property was located in California in February 2010.  In California, Chen owns two homes, a car, and has at least some other personal property.  *See* Christina Chen Decl. Ex. 1 (schedule of assets and debts filed with state court listing two California homes, a Toyota Prius in Chen's possession, and other personal property in Ellen's possession).  In Taiwan, Chen owns the Condo from which he is currently excluded.   Although Chen claims that most of his personal property is located in the Taipei Condo, Third Chen Decl. ¶ 4(g), the Court agrees with Hao that this contention is difficult to square with the fact that Chen has not had access to the Taipei Condo for nearly two years.  Indeed, if the Taipei Condo contains most of Chen's personal property, as Chen claims, the Court finds it quite odd that he did not apply for exclusive use of the Condo until nearly a year-and-a-half after he was first excluded from the Condo.  Accordingly, the Court cannot give much credence to the claim that most of Chen's personal property is located in Taiwan, and this factor weighs somewhat in favor of finding domicile in California.

Second, as of February 2010, Chen possessed only a California driver's license.  Chen concedes that this factor cuts against domicile in Taiwan, but argues that this factor is not entitled to substantial weight because driving is not a required activity in Taiwan, as it is in the United States.  The Court agrees that this is a fair point and thus will not accord this factor significant weight in the analysis.  Nonetheless, as Chen did subsequently acquire a Taiwanese driver's license, there must be some utility in possessing a license, particularly for someone who intends to be a long-term, full-time resident.  Accordingly, the Court finds that this factor weighs slightly in favor of finding domicile in California.

9

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## 2. Factors supporting Taiwan as domicile

The Court finds that of the remaining *Lew* factors, three weigh in favor of domicile in Taiwan, to varying degrees: Chen's voting registration and voting practices, his membership in organizations, and his place of employment.  As to voting, Chen claims that he voted in the November 2008 Taiwan national election, but has never been registered to vote in the United States.  Third Chen Decl. ¶ 4(a).  Hao has offered no evidence that contradicts this representation, and the Court therefore agrees that Chen's voting practices weigh in favor of domicile in Taiwan.  As to membership in organizations, Chen makes much of his commitment to the Taoist community in Taiwan.  He claims that his family has long been associated with Ikwan Tao and that his family is currently involved in setting up a foundation and donating funds to build a temple and a nursing home.  Third Chen Decl. ¶ 5.  Chen claims that since 2003, he has become very involved in these activities and plans to dedicate most of his remaining life to "working in Tao" in Taiwan.  *Id.*  Chen does not explain of what his involvement with Ikwan Tao consists or whether this involvement requires his active presence in the Taoist community in Taiwan.  Nonetheless, as Hao has not offered any evidence challenging this association, the Court finds that this factor, too, weighs in favor of finding domicile in Taiwan.  Because Chen's association with Ikwan Tao remains somewhat vague, however, the Court finds that this factor should not be given significant weight in the analysis.

As to place of employment, the Court again has a difficult time evaluating this factor due to inconsistencies in Chen's representations.  In his declaration, Chen claims that in 2004, he took a job working as the manager of a venture investment fund, the Dragon Fund, located in Taipei. Third Chen Decl. ¶ 3(b).  He claims that after accepting this position, he resigned all of his positions in California, including his position with a company called Acorn, and that he had resigned from these positions long prior to February 2010.  *Id.*  In a deposition for the state proceeding taken on March 18, 2010, however, Chen stated that he remains on the Board of Directors of both Acorn, in Silicon Valley, and ATopTech, which is located in the United States. Ellen Decl. Ex. O, 154:4-24.  Nonetheless, it seems that these California and U.S.-based positions

10

1    are likely not full-time employment.  Accordingly, Chen's place of employment weighs slightly in

2    favor of finding domicile in Taiwan.

### 3.  Factors that do not strongly support either location

4    Finally, the Court finds that the remaining *Lew* factors do not strongly support either

5    possible domicile.  First, Chen's family is located in both California and Taiwan.  In February

6    2010, two of Chen's adult children lived in California, two lived in Massachusetts, and one lived in

7    China.  Fourth Chen Decl. ¶ 2(h); Third Chen Decl. ¶ 3(a).  His siblings, however, live in Taiwan.

8    Third Chen Decl. ¶ 4(d).  Similarly, Chen maintains brokerage and bank accounts in both

9    California and Taiwan.  While he claims that the bulk of his money is held in accounts in Taiwan

10   and elsewhere in Asia, these funds appear to be held in a Charles Schwab account that presumably

11   can easily be accessed from anywhere.[6]  *See* Christina Chen Decl. Ex. 1.  Accordingly, the Court

12   does not find either of these factors to be very helpful in determining domicile.  Finally, Chen has

13   paid taxes in both California and Taiwan since approximately 2003.  Although he filed his 2009

14   return as a non-resident of California, the Court does not find this particularly probative of his

15   intent in February 2010, as the return was not filed until after this litigation was commenced.

### 4. Chen was domiciled in California in February 2010

17   Based on the above analysis, it seems that Chen has strong ties to both Taiwan and

18   California, and that he may lead a bi-coastal life that is not easily characterized as "fixed" in one

19   location or the other.  On balance, however, the Court finds that the evidence put forth by Hao

20   demonstrates that in February 2010, Chen conceived of California as his fixed abode and intended

21   to remain there for the indefinite future.  At that time, Chen repeatedly referred to California as his

22   place of residence, often without even mentioning his secondary residence in Taiwan.  His ties to

23   California included two of his children, substantial real and personal property, a car and driver's

24   license, and continued professional obligations.  The Court has found, moreover, that glaring

25   inconsistencies in Chen's declaration severely undermine the credibility of his claims that he had

---

[6] Indeed, before the state court, Chen appears to have argued that the precise location of funds contained within the Schwab system is relatively unimportant.  *See* Order, *In re Matter of Ellen Chen and Wu Fu Chen*, No. 6-09-FL-001675, Ellen Decl. Ex. Q at 2 ("[Chen] argues that the transfers were in the Schwab financial system and the fact that the funds now reside in China should be of no concern as they are in the Schwab system there.").

Case No.: 10-CV-00826-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR ABSTAIN

1    gradually moved his domicile to Taiwan prior to 2010.  Chen may not avoid this Court's

2    jurisdiction by omitting critical information or by recharacterizing the facts to fit his current needs.

3    Indeed, if Chen continues to attempt to mislead the Court in the future, he risks the imposition of

4    sanctions.   For all of these reasons, the Court finds that Chen was domiciled in California when

5    this lawsuit was filed in February 2010.  Accordingly, diversity jurisdiction exists, and Chen's

6    motion to dismiss for lack of subject matter jurisdiction is DENIED.

7        **III. Abstention**

8        Chen argues, in the alternative, that if the Court finds that diversity jurisdiction exists, it

9    should nonetheless abstain from exercising jurisdiction because of the close relationship of this

10   action to the dissolution proceeding in state court.  Chen's arguments regarding abstention are

11   premised on his claim that Hao was merely a nominal holder of the Schwab account funds and the

12   interest in Chens, LLC, and WFChen, LLC.  Chen contends that the Schwab account was held by

13   Hao for the benefit of Ellen, and that Ellen and Chen agreed that the funds held and managed

14   therein would become community property after their marriage.  He claims further that Hao's

15   interest in the LLCs was funded entirely from the Schwab account and was likewise a nominal

16   interest only, held for the benefit of Ellen.  On this theory, Chen argues the assets contained in the

17   Schwab account and used to purchase Hao's interest in the LLCs are either community property of

18   the marriage, separate property of Chen, or some combination of community and separate property.

19   As such, Chen argues that the state court will necessarily have to undertake a characterization and

20   accounting of these assets in order to distribute the marital property and resolve the dissolution

21   proceeding.  He therefore claims that this Court should abstain from hearing Hao's claims and

22   defer to the proceedings already underway in state court.

23       When this Court heard Chen's initial motion to dismiss, the state court had considered and

24   rejected a motion by Chen to join Hao in the dissolution proceedings, apparently because the assets

25   in the Schwab account appeared to be separate property.  *See* Reporter's Transcript of Proceedings

26   6, attached to Reply Decl. of Gina Azzolino in Supp. of Mot. to Dismiss ("Azzolino Decl.") Ex. C,

27   ECF No. 74 ("I do believe [Hao's] joinder would not be required for enforcement of the judgment

28   from this case since . . . he doesn't control any community property.").  Chen has since amended

12

United States District Court
For the Northern District of California

1   his Schedule of Assets and Debts in the dissolution proceeding to include (1) the Schwab account

2   as an asset held in Hao's name in trust, and (2) the potential liability to Hao in this action as a

3   potential debt that may be held by Hao beneficially for Ellen.  *See* Christina Chen Decl. Ex. 1.

4   Chen also recently filed a renewed motion to join Hao in the dissolution proceeding, which is set

5   for hearing in state court on April 13, 2011.  Azzolino Decl. ¶ 4.  Chen argues that these

6   developments, along with the preexisting overlap between the state and federal cases, justify a stay

7   of the federal action.  In his motion, Chen identifies three possible grounds for abstention: (1)

8   principles of abstention for cases on the verge of the domestic relations exception to diversity

9   jurisdiction; (2) *Colorado River* abstention; and (3) *Younger* abstention.  The Court will address

10  each abstention doctrine in turn.

**A.  Abstention for Cases on the Verge of the Domestic Relations Exception**

12          The Court has already determined that this action does not fall within the narrow domestic

13  relations exception to diversity jurisdiction.[7]  *See Ankenbrandt v. Richards*, 504 U.S. 689, 704

14  (1992) ("the domestic relations exception encompasses only cases involving the issuance of a

15  divorce, alimony, or child custody decree").  As the Court previously noted, however, the Supreme

16  Court in *Ankenbrandt* indicated that "in certain circumstances, the abstention principles developed

17  in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), might be relevant in

18  a case involving elements of the domestic relationship even when the parties do not seek divorce,

19  alimony, or child custody."  *Id.* at 705.  Here, Chen does not invoke *Burford* abstention, but instead

20  relies upon appellate decisions that find abstention appropriate in cases that are "on the verge" or

21  within the "penumbra" of the domestic relations exception.  *See, e.g.*, *American Airlines, Inc. v.*

22  *Block*, 905 F.2d 12, 14 (2d Cir. 1990) (abstention appropriate for cases "on the verge" a

_____

[7] In his opening brief, Chen requests that the Court reconsider its prior finding that the domestic
relations exception to diversity jurisdiction does not apply to this case.  He argues that his recent
amendment to his Statement of Assets and Liabilities in the dissolution proceeding renders the
allegations in this case identical to those in the dissolution proceeding and suggests that this
changed circumstance may affect the Court's ruling.  The Court agrees with Plaintiff that such a
request for reconsideration is procedurally improper.  *See* Civ. L.R. 7-9.  In any case, as the Court
previously explained, the domestic relations exception is limited to "cases involving the issuance of
a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992).
Chen's recent amendment notwithstanding, this case does not seek issuance of a divorce, alimony,
or child custody decree.  Accordingly, it does not fall within the narrow domestic relations
exception as articulated by the Supreme Court.

13

1    matrimonial action); *Friedlander v. Friedlander*, 149 F.3d 739, 740-41 (7th Cir. 1998) (abstention

2    appropriate for cases within the penumbra, but not the core, of the domestic relations exception).

3          The contours of abstention for cases "on the verge" of the domestic relations exception are

4    not very clearly defined.  The Seventh Circuit has defined the "penumbra" of the domestic relations

5    exception to include "ancillary proceedings, such as a suit for the collection of unpaid alimony, that

6    state law would require be litigated as a tail to the original domestic relations proceeding."

7    *Friedlander*, 149 F.3d at 740.  The First Circuit, applying *Burford* abstention, has also approved

8    abstention in cases that "ask[] a federal court to decide in the first instance a series of sensitive

9    legal questions about the duties and privileges of parties to a then existing marriage," *Dunn v.*

10   *Cometa*, 238 F.3d 38, 42 (1st Cir. 2001), and in cases that threaten to interfere with the state court's

11   division of marital property.  *DeMauro v. DeMauro*, 115 F.3d 94, 98-99 (1st Cir. 1997).  Ninth

12   Circuit authority on this type of abstention appears to be somewhat more confined, however.  The

13   Ninth Circuit has indicated that abstention may be appropriate in cases seeking to enforce a support

14   decree, to enforce or invalidate a divorce decree, or to determine the rights and obligations of

15   spouses under a statute or contract.  *Csibi v. Fustos*, 670 F.2d 134, 137 (9th Cir. 1982); *see also*

16   *Fern v. Turman*, 736 F.2d 1367, 1370 (9th Cir. 1984) (finding abstention appropriate where action

17   sought invalidation of a term of divorce decrees).  Such cases truly are closely related to the

18   domestic relations exception, in the sense that they directly determine the rights of one spouse vis-

19   a-vis another or relate to decrees that the federal court lacks jurisdiction to issue in the first

20   instance.

21         In this case, the Court finds that the relationship between the instant federal action and the

22   state-court dissolution proceedings is too tenuous and uncertain to justify abstention under these

23   principles.  At this time, Hao is not a party to the state-court proceedings, and it remains unclear

24   whether the state court will need to resolve the issues presented in this case in order to characterize

25   and distribute assets in the dissolution proceeding.  The state court has already rejected one attempt

26   to join Hao in its proceedings and has suggested that the assets contained in and flowing from the

27   Schwab account may not fall within its jurisdiction.  *See* Reporter's Transcript of Proceedings 6,

28   attached to Azzolino Decl. Ex. C.  The issues presented in this case do not depend upon a

14

1    determination of the domestic relationship, *see Ankenbrandt*, 504 U.S. at 706 (stating that

2    abstention may be appropriate where the federal case depends upon the state court's determination

3    of the status of the domestic relationship), nor do they present novel or sensitive questions that

4    implicate state public policy regarding domestic relations.  In raising the possibility that abstention

5    might be appropriate in certain cases related to divorce or custody proceedings, the Supreme Court

6    cautioned that "[a]bstention rarely should be invoked, because the federal courts have a 'virtually

7    unflagging obligation . . . to exercise the jurisdiction given them.'"  *Id.* at 705 (quoting *Colorado*

8    *River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  At this time, the

9    Court does not believe that this case presents the rare circumstances in which abstention is

10   appropriate and thus will not abstain on this ground.

11            B.  ***Colorado River* Abstention**

12            Chen also contends that a stay is appropriate pursuant to the doctrine articulated in

13   *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  Under the

14   *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of

15   parallel state proceedings where doing so would serve the interests of "[w]ise judicial

16   administration, giving regard to the conservation of judicial resources and comprehensive

17   disposition of litigation."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800,

18   818 (1976); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927,

19   74 L.Ed.2d 765 (1983).  "Exact parallelism" between the state and federal actions is not required; it

20   is enough if the two actions are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416

21   (9th Cir. 1989).  Nonetheless, the Ninth Circuit has emphasized that "the *Colorado River* doctrine

22   is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the

23   jurisdiction given them.'" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado*

24   *River*, 424 U.S. at 817).  Accordingly, a stay of proceedings pursuant to the *Colorado River*

25   doctrine is appropriate only where "exceptional circumstances" are present.  *Id.*

26            Generally, a court determines whether *Colorado River* abstention is appropriate by

27   carefully weighing a number of relevant factors, "with the balance heavily weighted in favor of the

28   exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16.  However, the Ninth Circuit has

15

identified a "significant countervailing consideration" that may be dispositive, despite the presence of other factors favoring a stay. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). That is, "[u]nder the rules governing the Colorado River doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Id.* As the Supreme Court stated in *Moses H. Cone*:

> When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

460 U.S. at 28. Accordingly, a district court may stay a proceeding pursuant to *Colorado River* only if it has "full confidence" that the state court proceeding will resolve the federal litigation. *Intel*, 12 F.3d at 913 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)).

In *Intel*, the Ninth Circuit found that the district court abused its discretion in granting a stay in a case where the state court proceedings would resolve the issues in the federal action only if the state court affirmed an arbitration award, but not if the state court overturned the award. 12 F.3d at 913. Because of these "contingencies," the Ninth Circuit found "substantial doubt sufficient to preclude a Colorado River stay." *Id.* Here, similarly, Chen acknowledges that the state court proceeding will fully resolve the federal action only if it finds Hao to be the nominal owner of the Schwab account proceeds and the LLC interests, with Ellen as the true owner. In contrast, as Chen concedes, "a negative finding on the nominal ownership issue could return the matter to this Court for resolution of Mr. Hao's version of the same claims." Def.'s Reply at 7. At this point in the proceeding, the Court has no basis for finding either of these outcomes to be more likely than the other. The possibility that the state court could rule against Chen thus raises a "substantial doubt as to whether the state proceedings will resolve the federal action" similar to that found in *Intel*. Under Ninth Circuit precedent, this alone is sufficient to preclude abstention under *Colorado River*.[8] *See Intel*, 12 F.3d at 913 n.7 ("Since we find that there exists a substantial doubt as to

---

[8] Even if the Court did not find *Colorado River* inapplicable based on this ground alone, the Court would not find the "exceptional circumstances" required to abstain under this doctrine. As Hao points out, the sole plaintiff in this action is not a party to the state dissolution proceeding, and

16

United States District Court
For the Northern District of California

1   whether the state court proceedings will resolve all of the disputed issues in this case, it is

2   unnecessary for us to weigh the other factors included in the Colorado River analysis.").

3           C. *Younger* Abstention

4           Finally, Chen argues that the Court should abstain under *Younger v. Harris*, 401 U.S. 37

5   (1971).  *Younger* abstention is a jurisprudential doctrine rooted in principles of equity, comity, and

6   federalism that limits a federal court's power to enjoin or interfere with state-court litigation.  *San

7   Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546

8   F.3d 1087, 1092 (9th Cir. 2008).  Under the doctrine articulated in *Younger*, a federal district court

9   must abstain from exercising jurisdiction if four conditions are met: (1) a state-initiated proceeding

10  is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not

11  barred from litigating federal issues in the state proceeding; and (4) the federal court action would

12  "enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state

13  proceeding in a way that *Younger* disapproves."  *San Jose Silicon Valley Chamber of Commerce

14  Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008); *see also*

15  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148-49 (9th Cir. 2007).  A court should

16  abstain under *Younger* only when all four requirements are "strictly met."  *Id.* at 1148.

17          Here, the first and third requirements of *Younger* are clearly met.  The state-initiated

18  dissolution proceeding is ongoing, and Plaintiff has raised no federal claims in this action.  *See*

19  *AmerisourceBergen*, 495 F.3d at 1149 n.10 ("here, the third element is automatically satisfied

20  because Count I is a state law breach of contract claim and, accordingly, raises no federal questions

21  ─────────────────────────────────────

22  therefore the Court cannot consider the state action to be a parallel proceeding.  Chen claims that
    this argument is mooted if Hao is found to be the mere nominal owner of the Schwab assets, for

23  then Hao would stand in a special relationship to Ellen, who is a party to the state action.  While
    this may be true, the question of whether Hao is merely a nominal owner of the Schwab assets goes

24  directly to the merits of this case and cannot be determined on this motion.  Accordingly, this
    theory cannot justify abstention under *Colorado River*.  The Court notes, moreover, that a brief

25  review of the *Colorado River* factors does not suggest exceptional circumstances justifying a stay.
    Although the state court assumed jurisdiction first, the other factors cut against a stay.  The state

26  court has assumed jurisdiction over the *res* of Chen and Ellen's marriage, but not over the assets
    contested in this case.  The federal forum is not inconvenient to parties already litigating in

27  California.  It is not clear that the federal action will necessarily result in piecemeal litigation.  The
    case does not present sensitive or novel issues of state law.  As Hao is not a party to the state court

28  litigation, the state proceeding may not be adequate to protect his rights.  Finally, the Court has no
    reason to believe that retaining jurisdiction would promote forum shopping.  *See Holder*, 305 F.3d
    at 870 (articulating *Colorado River* factors).

                                                    17

**United States District Court**
For the Northern District of California

1  whatsoever"). Additionally, to the extent Chen is correct in claiming that this case is inextricably

2  intertwined with the dissolution proceeding, the second factor is likely satisfied. In determining

3  whether an important state interest is implicated, the Court must look to "the importance of the

4  generic proceedings to the State." *New Orleans Public Service, Inc. v. Council of City of New*

5  *Orleans*, 491 U.S. 350, 365 (1989). That is, the court does not focus on the state's interest in the

6  resolution of the individual case, but rather considers the significance of the interests involved

7  more broadly. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003).

8  Whether the state proceedings are "judicial in nature" or "quasi-criminal" is also significant. *Id.*

9  Here, although the dissolution proceeding is not quasi-criminal in nature, it is a judicial proceeding,

10  and the regulation of domestic relations is well recognized as a unique state interest. *See Csibi*,

11  670 F.2d at 137 (describing strong state interest and expertise in domestic relations). Evaluation of

12  the second factor is complicated, however, in that Hao contends that this case in fact bears little

13  relationship to the domestic relations issues being litigated in the state court action.

14       In any case, the Court finds that abstention is not appropriate in this instance because the

15  fourth requirement under *Younger* is clearly not met. The Ninth Circuit has emphasized that

16  "abstention is only appropriate in the narrow category of circumstances in which the federal court

17  action would actually 'enjoin the [ongoing state] proceeding, or have the practical effect of doing

18  so.'" *AmerisourceBergen*, 495 F.3d at 1151. This occurs, for instance, when a federal court's

19  finding that a state statute or regulatory scheme is unconstitutional would effectively enjoin

20  enforcement of that statute in ongoing state court proceedings. *See Gilbertson v. Albright*, 381

21  F.3d 965, 982 (9th Cir. 2004). In contrast, "the Supreme Court has rejected the notion that federal

22  courts should abstain whenever a suit involves claims or issues simultaneously being litigated in

23  state court merely because whichever court rules first will, via the doctrines of res judicata and

24  collateral estoppel, preclude the other from deciding that claim or issue." *AmerisourceBergen*, 495

25  F.3d at 1151. Here, as in *AmerisourceBergen*, this Court's determination of Hao's claims to the

26  Schwab assets and interests in the LLCs will not enjoin or in any way impede the state-court

27  dissolution proceeding. Rather, the state court will be "free to continue simultaneously with the

28  federal suit," *id.* at 1152, and if federal court resolves Hao's claims first, the state court will simply

18

United States District Court
For the Northern District of California

1   apply principles to issue preclusion to determine the effect, if any, of that ruling on the relevant

2   issues in the dissolution proceeding.  *See id.* (finding that potential application of collateral

3   estoppel arising from concurrent state and federal proceedings does not justify abstention under

4   *Younger*).  Under such circumstances, concurrent jurisdiction over potentially related issues is

5   entirely proper, and it would be error for this Court to abstain pursuant to *Younger*.

6          As the Court has found that none of the grounds for abstention apply at this time, Chen's

7   request, in the alternative, that the Court abstain from exercising jurisdiction is DENIED.

8      **IV. Conclusion**

9          For the foregoing reasons, the Court DENIES Defendant's motion to dismiss or, in the

10  alternative, to abstain from exercising jurisdiction.  The hearing on Defendant's motion set for

11  March 17, 2011 is VACATED.  As the Court has found that jurisdiction exists and the case will

12  move forward, the Court will hold a case management conference on April 6, 2011 at 2 p.m.

13  Pursuant to the Local and Federal Rules, the parties shall file a joint case management statement no

14  later than March 30, 2011.

15  **IT IS SO ORDERED.**

16

17  Dated: March 16, 2011                    _____

18                                           LUCY H. KOH
                                             United States District Judge

19

20

21

22

23

24

25

26

27

28

Case No.: 10-CV-00826-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR ABSTAIN